THE STATE, CHARLES CHAMBERLAIN, PROSECUTOR, v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN.

1. The legislature having, by charter, (*Laws*, 1872, *p.* 602,) directed the manner of publishing the proceedings of the council, they can be published in no other way.
2. By the above cited act, the newspapers designated for publication must have been, at the time of the passage of the act, authorized to publish the laws of this state. They must have been published regularly, for the term of one year or nine months prior to the act.
3. Where the charter prescribes that printing shall be paid for at a limited price per folio, the council cannot contract to pay a sum in gross.
4. If part of a by-law, ordinance, or resolution be void, another essential and connected part of the same is also void.

On *certiorari*, bringing up a resolution of the defendants, passed November 10th, 1874, designating the Hoboken Standard, and Hudson County Journal to publish the proceedings of the council and board of education of said city. Also a second resolution, of same date, that there be paid the proprietors of said papers for doing said work, annually, the sum of $4000, and no more, to be paid in equal monthly payments.

Argued at February Term, 1875, before Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the prosecutor, *Dixon*.

For the defendant, *James W. Vroom*.

State, Chamberlain, pros., v. Mayor, &c., of Hoboken.

The opinion of the court was delivered by

SCUDDER, J. By the act of March 19th, 1872, (*Laws,* 602,) the common council of the city of Hoboken shall designate two newspapers, " both of which shall not be of the same political party," one of each political party, which shall publish the proceedings of the council and board of education of said city, and such matters and things as are now required to be published by the charter of the city of Hoboken, or by any amendment thereof, or supplement to the same, at prices to be fixed by the common council, at rates not exceeding those authorized by law for the printing of legal notices ; *provided,* that said newspapers are printed and published in the said city of Hoboken, and now authorized to publish the laws of this state."

The legislature having directed the manner of the publication, the council of Hoboken can publish in no other way. Unless the resolutions in controversy are within the terms of this supplement, they are void, because in excess of the authority given.

It is first objected, that the two papers designated are not of different politics. It is some relief to feel that we are not called upon in this case to determine the exact line that divides the two great political parties that exist in our state and country. The only witness sworn upon this point says that, in March, 1872, the Standard belonged to the republican party, and his impression was that the Journal was a democratic paper. But this Journal was a German paper. An English Hudson County Journal was issued, October 17th, 1874. This appears to be the paper designated in the resolution. As it bears the same name, and the testimony is silent, it is not an extreme presumption to conclude that it is the same paper, in a different language, either continued or translated in that form, and has not changed its politics— *linguam non animum mentant.* There is, at least, a failure of proof against the resolution in this respect.

Another reason alleged for avoiding the resolution is, that the Journal was not " now," that is, at the time the act was

passed, March 19th, 1872, authorized to publish the laws of this state. The supplement to the act entitled "an act to provide for the publication of the public laws of this state," approved April 6th, 1865, *p.* 953, requires that such newspapers shall have been regularly published for the term of one year or more.

The Journal, in English, was not published until October 17th, 1874, which was more than two years after the passage of the supplement to the charter in 1872, and less than a month before the time when the resolution was passed, November 10th, 1874. Unless this was the same paper that, prior to 1872, had been printed in German, there was no authority to use it for publishing the proceedings of the common council and board of education of that city. It must have existed one year before the act of March 19th, 1872, to be *then* authorized to publish the laws of this state. Whether it was the same paper, or another, is left in doubt by the evidence; but it is not necessary for the determination of this case, because the next objection is fatal to the resolutions.

This last reason is, that the prices to be fixed by the common council must be at rates not exceeding those authorized by law for the printing of legal notices.

The rate fixed in the second resolution is, that there shall be paid to each of the papers, the sum of $4000, and no more, annually, to be paid in equal monthly payments.

It will be observed that the amount payable is entirely irrespective of the amount of work done. It guards that the city shall not pay more than $4000, but does not protect the city from an overpayment. The publisher shall have his $4000, if half the value of that sum be rendered in work at the legal rates. The legislature have wisely guarded the city against this very kind of job working, by providing another method of payment, exactly commensurate with the amount of work done, within a fixed and reasonable price. The rates prescribed are not to exceed those authorized by law for the printing of legal notices. Those rates we find in the supplement to an act entitled "An act to establish a uni-

form rate of charges for legal advertising in New Jersey," approved March 6th, 1863, *p.* 180; *Nix. Dig.* 328, § 40. They are, sixty cents per folio for one hundred words, for the first insertion, and thirty cents per folio for each subsequent insertion after the first. It is no answer to say that the sum of $4000 per annum may not be in excess of these rates, or may even be less. Whether more or less, is not the question. The statute requires payment by items, by counting the folios, and paying the sum fixed for each particular folio, while the resolution provides for payment in gross, without respect to the number of folios. Every month the publisher may draw one-twelfth of $4000, whether he has done any printing for the city or not. This is a plain violation of the law, and annuls the resolutions.

It was suggested that the first resolution, appointing the two papers, and the following one, fixing the price to be paid, may be separated, and the latter repealed, leaving the former valid. But the two resolutions are connected, and each is essential to the other. If the latter be stricken out, there is no compensation provided for the work to be done under the former. The two resolutions taken together, when accepted by the newspaper proprietors, form a contract, if legal, and cannot be separated. They fall within the rule that, if part of a by-law, ordinance, or resolution be void, another essential and connected part of the same by-law, ordinance, or resolution is also void. *Dillon's Mun. Corp.,* § 354.

Both resolutions are set aside as illegal.